# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TIMOTHY RICE | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| C/O LAIR, Correctional Officer, LT. MARTIN, Correctional Officer, C/O BAZEMOORE, Correctional Officer and UNIT MANAGER LUPUS | : : : : | NO. 21-5261 |

## MEMORANDUM OPINION

**Savage, J.**                                                                                             **August 15, 2023**

        The issue in this action for claims arising out of an alleged assault at State Correctional Institution Phoenix is whether plaintiff Timothy Rice, a state prisoner, failed to exhaust administrative remedies as required by the Prison Litigation Reform Act (PLRA). To resolve the issue, we must determine whether a Pennsylvania prisoner complaining of abuse must pursue the appeals process prescribed by the Inmate Grievance System, DC-ADM 804, or need only file a grievance or report the allegation of abuse under the Inmate Abuse Policy, DC-ADM 001.

        We conclude that Rice was not excused from exhausting the appeals process prescribed in DC-ADM 804. Even if DC-ADM 001 offers an alternative exhaustion process, Rice filed this action before the prison officials completed their investigation and issued a decision. Therefore, we shall dismiss his claim.

## Facts

        Rice filed a grievance dated November 3, 2021, and stamped "received" on

November 5, 2021.[1] Using the DC-ADM 804 Official Inmate Grievance form, he wrote:

> On 11/3/21 around 11:00 AM I was escorted to medical for hunger strike. Miss ten meals, c/o Lair along with other staff official, c/o Lair use excessive force on inmate Rice, why (sic) I was handcuff behind my back. I fell out, and c/o Lair along with other officers, c/o Lair seen on hand held hand 713 video camera, bang my head on emergency box and threw me to ground and twist my ankle. Perserve (sic) security camera. 1.2 million request.[2]

The prison treated his grievance as complaining of physical abuse. In accordance with Inmate Abuse Procedures Manual DC-ADM 001, the facility grievance coordinator informed Rice on November 5, 2021, that the facility was extending its response time to investigate his allegations of abuse.[3] Rice denies that he received the notification.[4]

On November 22, 2021, Rice requested the findings of the investigation and complained that he had not been interviewed.[5] Staff responded, "the response is pending."[6] In a separate request written on the same day, he asked the superintendent if he intended to resolve the grievance "before the deputy attorney general gets involved."[7] He also requested a meeting with the Department of Correction's (DOC) representative. A staff member responded, "your grievance is an allegation of abuse and is pending a response."[8]

The following day, on November 23, 2021, Rice filed this action alleging violations

---

[1] Rice Official Inmate Grievance, ECF No. 60 (attached as Ex. 1 to Defs.' Memo. of Law Regarding Exhaustion Remedies, ECF No. 60 ["Defs.' Memo"]).

[2] *Id.*

[3] DOC000002, Initial Level Extension, ECF No. 60 (attached as Ex. 1 to Defs.' Memo).

[4] Pl.'s Memo of Law Br. ¶ 1, ECF No. 57 ["Pl.'s Memo"].

[5] DOC000007, Inmate's Request to Staff Member, ECF No. 60 (attached as Ex. 2 to Defs.' Memo) ["DOC000007, Inmate's Request"].

[6] *Id.*

[7] DOC000006, Inmate's Request to Staff Member, ECF No. 60 (attached as Ex. 2 to Defs.' Memo).

[8] *Id.*

2

of his Eighth Amendment right to be free of cruel and unusual punishment against Officer Leary for use of excessive force, Officers Bazemoore and Martin for failure to intervene, and Unit Manager Luquis for deliberate indifference to his medical needs.[9]

On June 2, 2022, eight months after he filed his grievance, the DOC notified Rice that his abuse allegation was deemed unsubstantiated.[10] The allegation was investigated by the Internal Security Department at SCI-Phoenix and reviewed by the Department's Bureau of Investigations and Intelligence (BII), which found the investigation satisfactory.[11] Rice did not appeal the Initial Review Denial.

At Rice's request, we appointed counsel to represent him in this action. Six months after receiving the Initial Review Denial, on December 8, 2022, Rice's counsel filed an Amended Complaint.[12] For reasons not relevant to the issue before us, counsel was permitted to withdraw.

The defendants having raised the affirmative defense of failure to exhaust administrative remedies, we ordered the parties to conduct limited discovery and submit memoranda on the issue of exhaustion.[13] The parties timely filed memoranda. After considering the parties' arguments, we ordered them to submit supplemental memoranda addressing the applicability of the Pennsylvania Department of Corrections Inmate Abuse Policy, DC-ADM 001.[14]

Rice argues that because he alleged physical abuse, he was not required to follow

---

[9] Compl. §§ IV, V, Nov. 23, 2021, ECF No. 2.

[10] DOC000001, Initial Review Response, ECF No. 60 (attached as Ex. 1 to Defs.' Memo).

[11] *Id.*

[12] Am. Compl., ECF No. 33.

[13] Order, Feb. 10, 2023, ECF No. 52.

[14] Order, May 25, 2023, ECF No. 62.

3

the appeals procedure required for typical grievances, but only the procedure for grieving abuse claims.[15] He maintains that he satisfied the exhaustion requirement under the Inmate Abuse Policy, DC ADM-001.[16] Alternatively, he argues that the administrative appeals process was unavailable because the DOC deliberately did not notify him that it issued an extension of time to investigate his inmate abuse allegation.[17]

The defendants argue that because Rice failed to appeal the DOC's denial of his initial excessive force grievance, his claim must be dismissed.[18] They maintain that the Inmate Abuse Policy, DC-ADM 001, does not obviate the requirement that an inmate complete the appeals process provided in the Inmate Grievance System, DC-ADM 804.[19]

**Analysis**

Before filing suit complaining of prison conditions under federal law, a prisoner must exhaust all available administrative remedies. *Ramirez v. Collier*, 142 S. Ct. 1264, 1275 (2022); *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 305 (3d Cir. 2020). The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983...or any other Federal law...until administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). To properly exhaust, the prisoner must comply with all deadlines and procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). He must pursue all available avenues in the process. *Id.*; *see also Ross v. Blake*, 578 U.S. 632,

---

[15] Pl.'s Am. Memo. Br. ¶ 2, ECF No. 59 ["Pl.'s Am. Memo"].

[16] Pl.'s Supp. Memo of Law Addressing the Applicability of Pa. Dept of Corr. Inmate Abuse Allegation Monitoring Pol'y, DC-ADM 001, on the Exhausting Issue ¶ 4, ECF No. 64.

[17] Pl.'s Memo ¶ 1; Pl.'s Am. Memo. Br. ¶ 1.

[18] Defs.' Memo. at 8.

[19] Defs.' Supp. Memo. of Law Regarding Exhaustion Remedies ¶¶ 6,8, ECF No. 66 [Defs.' Supp. Memo."].

638-39 (2016); *Spruill v. Gillis*, 372 F.3d 218, 222 (3d Cir. 2004). If he fails to do so, his action must be dismissed. *Spruill*, 372 F.3d at 227.

The exhaustion requirement is mandatory. A court may not excuse a failure to exhaust even if there are "special circumstances." *Ross*, 578 U.S. at 639. The only exception is when an administrative remedy is not available. Section 1997e(a) of the PLRA only requires the exhaustion of available remedies. Stated differently, if administrative remedies are not available, there is nothing to exhaust.

Administrative remedies are deemed unavailable where: (1) the administrative procedure, in practice, does not afford inmates a real chance for success because the prison administrators consistently refuse or are unable to provide relief; (2) the procedure is so "opaque" that inmates cannot "discern or navigate it;" or (3) prison administrators prevent or thwart inmates from pursuing grievances through the process by "machination, misrepresentation, or intimidation." *Id.* at 643–44.

### Exhaustion Pursuant to DC-ADM 804

Pennsylvania Department of Corrections Administrative Regulation 804 ("DC-ADM 804"), the "Inmate Grievance System," prescribes the process for inmates to present grievances.[20] It mandates that an inmate "must submit a grievance to the Facility Grievance Coordinator/designee, usually the Superintendent's Assistant, within 15 working days after the event upon which the claim is based."[21]

To initiate a grievance, the inmate must complete the "DC-804, Part 1 form" that is

---

[20] COMMONWEALTH OF PA., DEP'T OF CORR., POL'Y NO. DC-ADM 804, INMATE GRIEVANCE PROCEDURES MANUAL, May 1, 2015, https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/804%20Inmate%20Grievances.pdf

[21] DC-ADM 804 § 1.A.8.

available in the housing units, main areas, and mini-law libraries.[22] He must place it in a grievance lock box.[23] He must include a statement of facts, including "the date, approximate time, and location of event(s) that gave rise to the grievance"; identify the individuals involved; specify what policies or laws have been violated; and state the relief he seeks.[24] Separate events must be grieved separately.[25]

The Facility Grievance Coordinator designates a correctional officer to serve as the Grievance Officer to review the claim.[26] The Grievance Officer submits a written response for review by the Facility Grievance Coordinator. Once approved, the Grievance Officer sends the response to the inmate.[27]

The inmate may appeal the Grievance Officer's decision to the Facility Manager "within 15 working days from the date of the initial review response/rejection."[28] The Facility Manager renders a disposition with a brief statement of the reasons for the decision.[29]

If the inmate is dissatisfied with the Facility Manager's disposition, he must appeal to final review "within 15 working days from the date of the Facility Manager/designee's decision."[30] The appeal must provide copies of documentation from the previous two appeals to the Chief of the Secretary's Office of Inmate Grievances and Appeals

---

[22] *Id.* §§ 1.A.5-B.1.
[23] *Id.*
[24] *Id.* §§ 1.A.11.a-d.
[25] *Id.* § 1.A.14.
[26] *Id.* § 1.C.3.
[27] *Id.* § 1.C.6.
[28] *Id.* § 2.A.1.a.
[29] *Id.* §§ 2.A.2.d.(2)-(3).
[30] *Id.* § 2.A.1.b.

(SOIGA).[31] SOIGA may issue an extension, remand the grievance to the Facility Manager, refer the matter to a specialized bureau for review, or notify the inmate and facility of its final review response.[32]

### DC-ADM 001 Inmate Abuse Policy

In cases of physical abuse, there is an alternative first step in the grievance process. The DOC maintains Administrative Regulation 001, "Inmate Abuse," "to ensure that an inmate is not subjected to corporal or unusual punishment, or personal abuse or injury."[33] Abuse is defined as the use of excessive or improper force, an unwarranted life-threatening act, or a threat to inflict physical injury.[34] It excludes "claims of inadequate medical or intentionally denied medical care."[35]

An inmate need not initiate his grievance by completing and filing a written grievance under DC-ADM 804. Under DC-ADM 001, he may alternatively report abuse by either filing a DC-ADM 804 grievance, reporting it orally or in writing to any staff member, or reporting it in writing to Department's Bureau of Investigations and Intelligence (BII).[36]

DC-ADM 001 provides a more flexible procedure to initiate the grievance process and calls for an investigation that is not available under DC-ADM 804. It also provides a vehicle for persons other than the inmate to report abuse. An employee receiving a

---

[31] *Id.* §§ 2.B.1.i-j.

[32] *Id.* § 2.B.2.

[33] COMMONWEALTH OF PA., DEP'T OF CORR., POL'Y NO. DC-ADM 001.III, INMATE ABUSE PROCEDURES MANUAL, Apr. 11, 2022, ECF No. 66 (attached at Ex. A to Defs.' Supp. Memo.) ["DC-ADM 001"].

[34] *Id.* Glossary of Terms 1.

[35] *Id.* Glossary of Terms 2.b.

[36] *Id.* IV.B.

complaint of abuse or witnessing abuse must report it. The policy is designed to track and monitor allegations of staff abuse of inmates by directing allegations of abuse to investigation.

Under DC-ADM 001, if the facility receives a grievance alleging abuse, the Grievance Coordinator issues an Extension Notice to the inmate informing him that the response time must be extended for an investigation by the Security Office.[37] The Security Office must obtain a case tracking number from the BII. It has five business days from receiving the abuse allegation to request the number.[38] Once it receives the case tracking number, the Security Office has 30 business days to investigate the incident, compile an investigative report and forward it to the BII for review.[39] If the Security Office needs more time to investigate, the Facility Manager may request an extension of time from BII providing the reason for the delay and the anticipated date of completion.[40] As part of its investigation, the Security Office must interview the complainant and witnesses, obtain written statements, and review all available video footage or relevant documentation.[41]

The BII has 15 business days to review the report and respond to the Facility Manager. The Facility Manager issues an Initial Review Response to the inmate.[42] An extension of time does not "alter the inmate's ability to appeal upon his/her receipt of the

---

[37] *Id.* § 1.B.2.
[38] *Id.* §§ 1.C.1-2.
[39] *Id.* § I.C.2.a.
[40] *Id.* § I.C.1.f.
[41] *Id.* § 1.C.
[42] *Id.* § 1.B.2.

Initial Review Response."[43]

*Exhaustion Analysis*

Rice did not identify Officers Martin and Bazemoore in his grievance. Nor did he include a failure to intervene claim. It did not allege that Unit Manager Luquis failed to provide adequate medical care. His grievance only alleged excessive force. Thus, he failed to exhaust administrative remedies for claims of deliberate indifference to his serious medical needs against Unit Manager Luquis and for failure to intervene against Officers Martin and Bazemoore.

Although DC-ADM 001 provides an alternative first step in the grievance process, it does not supplant the appeals process mandated by DC-ADM 804. A prisoner grieving excessive force under DC-ADM 001 is still obligated to pursue the appeals process prescribed in DC-ADM 804. *Moore v. Lamas,* No. 22-1007, 2023 WL 371397, at *2 (3d Cir. Jan. 24, 2023).

Under either DC-ADM 804 or DC-ADM 001, Rice's lawsuit was premature. He filed his initial lawsuit six months before the Internal Security Department completed its investigation.[44] In *Victor v. Lawler*, a case not unlike Rice's, the Third Circuit Court of Appeals held that a prisoner failed to exhaust his administrative remedies when he filed his federal complaint before the Security Office investigation of his abuse grievance was completed. 565 F. App'x 126, 130 (3d Cir. 2014).

---

[43] *Id.*

[44] Rice maintains that he never received notice informing him that the DOC's response time would be extended for his allegation of abuse (AOA) investigation. On November 22, 2021, he requested the findings of the AOA investigation. DOC000007, Inmate's Request; Decl. of Kristina Owens ¶ 14, ECF No. 60 (attached as Ex. A to Defs.' Memo.). Kristina Owens, the Facility Grievance Coordinator, responded the same day, informing him that the investigation was ongoing. *Id.* Nonetheless, Rice filed this action before the investigation's conclusion.

That he amended his complaint after the conclusion of the investigation does not cure his failure to exhaust. In *Oriakhi v. United States*, the Third Circuit warned: "Indeed, there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court." 165 F. App'x 991, 993 (3d Cir. 2006) (citing *Johnson v. Jones*, 340 F.3d 624, 627–28 (8th Cir. 2003).

Rice did not allow the DOC to rule on his grievance. Therefore, because he failed to exhaust the administrative remedies available to him under either DC-ADM 001 or DC-ADM 804, we shall dismiss this action.